IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| KATHERINE SARNOWSKI, Personal Representative of the Estate of Damion Banks,<br><br>          Plaintiff,<br><br>   v.<br><br>COLLETTE PETERS, Personally; TONIA RIDLEY, Personally; BRIDGETT WHELAN, Personally; JOHN MYRICK, Personally; and SGT. ANNETTE HOUSTON, Personally,<br><br>          Defendants. | Case No. 2:16-cv-00176-SU<br><br>**OPINION AND ORDER** |

SULLIVAN, United States Magistrate Judge:

      Before the Court is plaintiff's Motion to Compel Discovery (Docket No. 39). Plaintiff seeks to compel the depositions of defendants Collette Peters, John Myrick, Tonia Ridley, and Bridgett Whelan, and to compel defendants to respond to certain interrogatories and requests for

Page 1 – OPINION AND ORDER

production. Although plaintiff requested oral argument, the Court has determined that her Motion is suitable for decision without oral argument. For the following reasons, the Court GRANTS IN PART AND DENIES IN PART plaintiff's Motion to Compel.

## FACTUAL BACKGROUND

This action concerns the death of Damion Banks, an inmate in Oregon Department of Corrections ("ODOC") custody at the Two Rivers Correctional Institution ("TRCI"). 2d Am. Compl. (Docket No. 21). Defendants are ODOC and TRCI officers and employees. *Id.* ¶ 4. Plaintiff alleges that Banks died from inmate assault and severe trauma, and defendants were deliberately indifferent to his safety, housing, and health. *Id.* ¶¶ 28, 32, 34-42. Medical examiners reported Banks' cause of death as natural: "pulmonary hemorrhage due to pheochromocytosis." *Id.* ¶ 22.[1] Plaintiff alleges that there are inconsistences as to observations of Banks' health, statements in medical records, and evidence of violence. *Id.* ¶¶ 19, 24-26, 28. Plaintiff alleges that other TCRI inmates died suspiciously, that gangs threatened Banks, and that Banks told his family he feared for his life. *Id.* ¶¶ 10-14, 21. Banks' injuries were inflicted (or his health deteriorated) on February 4, 2014, and he died the next day. *Id.* ¶¶ 15-20, 28-29.

## PROCEDURAL BACKGROUND

Plaintiff is Banks' mother and the personal representative of his estate. Plaintiff brings two causes of action, under 42 U.S.C. § 1983, for "Eighth Amendment, Cruel and Unusual Punishment – Failure to Protect," and "Deliberate Indifference to Serious Medical Need." 2d Am. Compl., at 8-9. In support of her § 1983 claims, plaintiff alleges that defendants failed to

---

[1] "A functional chromaffinoma, usually benign, derived from adrenal medullary tissue cells and characterized by the secretion of catecholamines, resulting in hypertension, which may be paroxysmal and associated with attacks of palpitation, headache, nausea, dyspnea, anxiety, pallor, and profuse sweating. Pheochromocytoma is often hereditary . . . ." *Pheochromocytoma*, Stedman's Medical Dictionary 680840 (2014).

respond properly to Banks' request to be transferred to a lower-security facility, which would have "likely" prevented his death; failed to properly monitor inmate telephone calls, whereby they could have learned of Banks' report that he feared for his life; failed to maintain the closed circuit television system ("CCTV") in violation of the "ODOC REPAIR program," where monitoring would have deterred the violence against Banks; failed to maintain proper staffing and monitoring of inmates in common areas, thereby permitting intimidation and assault; and failed to provide Banks medical treatment, or to train and staff medical personnel, who "may have been able to intercede and save [Banks'] life." *Id.* ¶¶ 34-41.

Defendant Peters is the current ODOC director. 2d Am. Compl. ¶ 4. Myrick is the former TRCI superintendent, and at the times relevant to the pleadings was Assistant Superintendent of Security at TRCI. *Id.* Ridley was the Assistant Superintendent of General Services at TRCI, and Whelan was Medical Services Manager at TRCI. *Id.*

On April 17, 2017, pursuant to the Court's informal discovery dispute procedures, counsel for plaintiff emailed to inform the Court that the parties had a discovery dispute. In a subsequent email, on April 27, 2017, plaintiff's counsel presented his position and argument; defense counsel responded by email on May 8, 2017. The Court held a status conference on June 14, 2017, regarding the dispute. (Docket No. 36). Because of various deficiencies with both parties' presentation of the arguments, the Court directed the parties to submit motions to compel regarding the disputed discovery requests.

Plaintiff seeks an order compelling the depositions of Peters, Myrick, Ridley, and Whelan, and responses to interrogatories and requests for production. Plaintiff served the discovery requests on March 5, 2017; defendants responded on March 24, 2017. Pl. Mot., at 4 (Docket No. 39). Plaintiff provides the disputed discovery requests as to Peters and Myrick.

## LEGAL STANDARD

Under Fed. R. Civ. P. 37(a)(3)(B)(iii) and (iv), a party may move for an order compelling answers to interrogatories or the production of requested documents.

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

"A party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirement of Rule 26(b)(1). In turn, the party opposing discovery has the burden of showing that discovery should not be allowed and also bears the burden of clarifying, explaining, and supporting its objections." *Frontier Recovery, LLC v. Lane County*, No. 09-6017-TC, 2009 WL 2253726, at *2 (D. Or. July 24, 2009); *Yufa v. Hach Ultra Analytics*, No. 1:09-cv-3022-PA, 2014 WL 11395243, at *1 (D. Or. Mar. 4, 2014) ("If a party elects to oppose a discovery request, the opposing party bears the burden of establishing that the discovery is overly broad, unduly burdensome, or not relevant. Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all." (citation and quotation omitted)). If a party objects to a discovery request, it is the burden of the party seeking discovery on a motion to compel to demonstrate why the objection is not justified. *Weaving v.*

*City of Hillsboro*, No. CV-10-1432-HZ, 2011 WL 1938128, at *1 (D. Or. May 20, 2011). In general, the party seeking to compel discovery must inform the court which discovery requests are the subject of the motion to compel, and, for each disputed request, inform the court why the information sought is relevant and why the objections are not meritorious. *Id.*

"Failure to object to a discovery request within the time permitted by the Federal Rules of Civil Procedure, or within the time to which the parties have agreed, constitutes a waiver of any objection." L.R. 26-5(a); *see also* Fed. R. Civ. P. 33(b)(4) ("Any ground not stated in a timely objection is waived . . . .").

**ANALYSIS**

**I.** **Depositions of Defendants Peters, Myrick, Ridley, and Whelan**

Plaintiff moves to compel the depositions of Peters, Myrick, Ridley, and Whelan. Defendants respond that these defendants are "high ranking government officials" who are normally not subject to deposition.

Defendants cite case law, much of it out-of-circuit, regarding the burden a party must meet in seeking to depose high ranking government officials. *Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979) ("Heads of government agencies are not normally subject to deposition," regarding defendant Administrator of the Small Business Administration); *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 580, 586 (D.C. Cir. 1985) ("top Department of Labor officials, who the ALJ found to have no personal knowledge of the facts surrounding this particular case"); *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993) (Commissioner of Food and Drug Administration); *In re United States (Holder)*, 197 F.3d 310, 314 (8th Cir. 1999) (Attorney General and Deputy Attorney General); *Boga v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007) (Mayor of Boston); *Thomas v. Cate*, 715 F. Supp. 2d 1012,

1048 (E.D. Cal. 2010) (Governor of California); *Baine v. Gen. Motors Corp.*, 141 F.R.D. 332, 335 (M.D. Ala. 1991) (vice president of General Motors Corp.); *United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 320 (D.N.J. 2009) (former Environmental Protection Agency Regional Administrator); *Low v. Whitman*, 207 F.R.D. 9, 12 (D.D.C. 2002) (Deputy Chief of Staff to the Administrator of the Environmental Protection Agency). However, the degree of superiority and authority of the contested deponents in those cases far exceeds that of Myrick, Ridley, and Whelan. Myrick was the Assistant Superintendent of Security at TRCI; Ridley was the Assistant Superintendent of General Services; and Whelan was Medical Services Manager. These are positions directly relevant to plaintiff's claims regarding housing, monitoring, staffing, security, safety, and medical care, and not necessarily high ranking officials. Defendants' objections to the depositions of Myrick, Ridley, and Whelan are unavailing. The Court GRANTS plaintiff's Motion to Compel as to deposing these three defendants.

Peters, however, as the ODOC director, is a high-ranking executive official:

An official may be deemed "high-ranking" when he or she has substantial authority and seniority, such that a deposition might significantly hinder the official's ability to function as a high-level public servant. Individuals with "substantial authority" have been found to include those who have a high level of responsibility for budget, personnel and resource issues.

*Natty v. Donahoe*, No. CV 11-10147-DSF(CWx), 2013 WL 12140158, at *2 (C.D. Cal. Jan. 10, 2013) (citation and quotation omitted). The director of a state's correctional institutions has substantial authority and seniority, with responsibility for budgeting, personnel, and resources.[2]

---

[2] Defendants allege that Peters, as ODOC Director, "oversees the operations and policies of the corrections agency responsible for managing approximately 14,000 incarcerated individuals in 14 prisons across the State of Oregon and a budget of $1.4 billion." Defs. Resp., at 4 (Docket No. 42). Defendants, however, present no evidence of this; they only offer attorney argument. Despite this deficiency, the Court finds it sufficiently evident that the ODOC director is a high-ranking executive official. *See* Oregon Department of Corrections, DOC Administration, "Director and Deputy Director," http://www.oregon.gov/doc/ADMIN/pages/director.aspx;

The Court thus proceeds to the next stage of the inquiry:

> [O]nce the Court determines that an official is entitled to invoke the [deposition] privilege, the burden shifts to the party seeking to depose the high-ranking official. A party seeking the deposition of a high-ranking government official must show: (1) the official's testimony is necessary to obtain relevant information that is not available from another source; (2) the official has first-hand information that cannot reasonably be obtained from other sources; (3) the testimony is essential to the case at hand; (4) the deposition would not significantly interfere with the ability of the official to perform his government duties; and (5) the evidence sought is not available through less burdensome means or alternative sources.

*Thomas*, 715 F. Supp. 2d at 1049 (citations omitted); *Sargent v. City of Seattle*, No. C12-1232 TSZ, 2013 WL 1898213, at *2-3 (W.D. Wash. May 7, 2013); *K.C.R. v. County of Los Angeles*, No. CV 13-3806 PSG (SSx), 2014 WL 3434257, at *3-4 (C.D. Cal. July 11, 2014).

Plaintiff makes no argument, and presents no evidence, on any of these elements as to Peters. She merely argues that Peters "did not properly train and oversee staff" to implement ODOC policies and execute ODOC operations, that Peters has "oversight and supervision of the CCTV program and staffing," and that Peters "is listed at the top of the TRCI Organizational chart and has final authority" over staffing and CCTV monitoring. Pl. Mot., at 20 (Docket No. 39). These arguments as to Peters' high-ranking position, rather than establishing why she should be deposed, in fact support the policy and rule *against* the deposition of high-ranking officials, due to their distance from those with first-hand knowledge and their high-level duties. *See Thomas*, 715 F. Supp. 2d at 1048 ("[H]igh ranking government officials have greater duties and time constraints than other witnesses and . . . , without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation." (quotation omitted)). In response, defendants argue (though present no evidence) that Peters has no first-hand knowledge

---

Oregon Department of Corrections, "Central Administration Organizational Chart" (Sept. 1, 2017), http://www.oregon.gov/doc/OC/docs/pdf/org_chart.pdf; *see also* Or. Rev. Stat. § 423.075 (creating position of ODOC director, establishing responsibilities, and granting powers).

and that any relevant information is obtainable from other sources. Despite defendants' evidentiary deficiencies, the burden is plaintiff's, and she has not met it. The Court DENIES plaintiff's Motion to Compel the deposition of Peters.

## II.  Requests for Production and Interrogatories

### A.  Defendants' Objections

#### 1.  Adequacy of the Pleadings and § 1983 Liability

As to each request for production and interrogatory, defendants object that

> it would be unduly burdensome for [them] to respond as Plaintiff has not alleged or established any facts in her second amended complaint that suggest [they] personally participated in the alleged Eighth Amendment violation. "Liability under § 1983 must be based on the personal involvement of the defendant. There is no *respondeat superior* liability under section 1983."

*E.g.*, Pl. Mot., at 4 (Docket No. 39) (quoting *Shallowhorn v. Molina*, 572 F. App'x 545, 546 (9th Cir. 2014)).[3] Defendants attempt, in response to discovery requests, to argue the merits of their Motion for Summary Judgment (Docket No. 23). The Court has previously indicated it would not rule on the Motion for Summary Judgment until the discovery disputes were resolved.

Arguments regarding whether plaintiff has stated a claim, whether the proper defendants are named in the suit, and whether certain defenses are meritorious are not proper objections to discovery requests. *See, e.g.*, *United States v. Real Property & Improvements Located at 2366 San Pablo Ave.*, No. 13-cv-02027-JST (MEJ), 2014 WL 2126912, at *2 (N.D. Cal. May 22, 2014) (holding, over objection that claimant was not entitled to discovery on affirmative defenses because claimant "will not be able to establish any of its affirmative defenses at trial," that claimant's "ability to prove its defenses is not the standard against which relevance is determined," and granting motion to compel discovery responses); *Wallis v. Centennial Ins. Co.*,

---

[3] For most of the discovery requests, this is the only specific objection defendants make.

No. 2:08-cv-2558 WBS AC, 2013 WL 528472, at *6 (E.D. Cal. Feb. 11, 2013) (holding, "insofar as defendants [were] attempting to re-litigate the merits of their motion to enforce settlement or attempting to argue . . . a new theory," and so did not have to respond to discovery requests, that the court would "not give weight to this objection" until the court separately ruled on a motion regarding the enforceability of the settlement agreement); *Nance v. May Trucking Co.*, No. 11-cv-0537-LAB (DHB), 2012 WL 1598070, at *3 (S.D. Cal. May 7, 2012) (rejecting argument that, because of alleged "fatal pleading deficiencies" in complaint, defendant did not have to respond to production requests: "Whether the . . . claims . . . are deficient or not is not presently at issue. Those claims . . . are the operative claims, and Plaintiffs are entitled to obtain discovery relevant to their operative claims."). Discovery objections must specifically address the documents or information requested, and whether a specific request is overbroad, unduly burdensome, irrelevant, etc. *See Frontier Recovery*, 2009 WL 2253726, at *2; *Yufa*, 2014 WL 11395243, at *1.

The Court previously granted defendants' Motion to Dismiss the First Amended Complaint with leave to amend as to defendants Peters, Myrick, Houston, Whelan, and Ridley. (Docket Nos. 17, 19). Plaintiff filed a Second Amended Complaint and amended her allegations against these defendants. (Docket No. 21). The Court has not ruled on defendants' Motion for Summary Judgment. Thus, the Second Amended Complaint is the operative pleading, its claims are the operative claims, and these defendants are still in this action. Plaintiff is entitled to relevant and proportional discovery as to these defendants. Fed. R. Civ. P. 26(b)(1). Defendants' objections are not well taken as plaintiff's ability to survive summary judgment depends on her ability to obtain the necessary evidence through these discovery requests. It is

improper for defendants to attempt to transform each discovery request, and the motion to compel briefing, into a backdoor motion for summary judgment.

Defendants' objections regarding the sufficiency of the pleadings and § 1983 liability are unavailing. The Court will not limit plaintiff's discovery based on these objections.

        2.      <u>Prison Floor Plans and Confidential Information</u>

            a)      Defendants' Objections

In response to plaintiff's request for TRCI floor plans (Req. for Prod. No. 4), defendants object that the request "is overbroad, irrelevant, and producing the confidential material requested would pose a serious security threat to TRCI." Pl. Mot., at 6 (Docket No. 39). As support for this proposition, defendants cite a California state case, *Procunier v. Superior Court of Monterey County*, 35 Cal. App. 3d 211, 212 (1973). Plaintiff counters that "Defendants in other corrections cases have produced floor plans , not even under protective order as to the document. See attached Ex. 2 CCSO floor plan, Dillon, et al v. CCSO et al 3:14-CV-820 YY (Not marked subject to a Protective Order)." Pl. Mot., at 20-21 (Docket No. 39) (errors in original).[4] Plaintiff argues that because the Court entered a protective order in this action (Docket Nos. 33, 34), "all security concerns are cured," Pl. Mot., at 21 (Docket No. 39).

---

[4] The floor plan from the "other corrections case[]" is attached not to plaintiff's Motion, but to the Berman Declaration (Docket No. 40). The Declaration states merely that "Plaintiff hereby declares that the following Exhibits are true copies of the originals: . . . 2. CCJ floor plan[.]" *Id.* ¶ 1. This is insufficient to authenticate the document. It does not indicate how *plaintiff* (Banks' mother) would have any relevant knowledge. Nothing in the Declaration supports the proposition that the "CCJ" floor plan was produced in an action against corrections officials. The Court is unable to determine from the unlabeled, cut-off image whether it was marked confidential or subject to a protective order. Plaintiff also suggests that it was the defendants in *this* action who produced the floor plan, but the defendants in *Dillon v. Clackamas County*, No. 3:14-cv-00820-YY (D. Or. 2014), were Clackamas County and Sheriff Craig Roberts. Despite these problems with plaintiff's submission, defendants have not objected to it.

*Procunier* is not relevant or proper authority. *Procunier* addressed whether the defendants waived a California statutory privilege, under the California Evidence Code, to refuse disclosure of official information (regarding prison floor plans and inmate gang membership lists), pursuant to California Government Code statutes that forbade such disclosure. 35 Cal. App. 3d at 212. Such a privilege would apply only in California state court, or a federal civil action in which California law provided the rule of decision. *See* Fed. R. Evid. 501. It has no bearing on a § 1983 action in a federal district court in Oregon. Defendants cite no analogous federal law (or even Oregon state law) barring such disclosure. *Procunier* provides no support for the proposition that a state may object "to a discovery request because this would endanger the security of the prison system and safety of the citizens of the state." Defs. Resp., at 9 (Docket No. 42). In fact, the California Supreme Court largely vacated *Procunier* three years after the decision, on the very issue defendants cite it for, because the California Public Records Act contained a provision stating that the disclosure exemptions were not to be interpreted as "in any manner" affecting the rights of litigants. *Shepherd v. Super. Ct. of Alameda Cty.*, 17 Cal. 3d 107, 124 (1976) (citing Cal. Gov't Code § 6260), *overruled on other grounds by People v. Holloway*, 33 Cal. 4th 96, 131 (2004).[5]

b) Security Concerns and Judge Simon's Order

Defendants have raised serious security and confidentiality concerns regarding the conduct of Mr. Berman, plaintiff's counsel, arising out of his representation of a party in a

---

[5] There is, under federal common law, the governmental privilege, also called the official information privilege or state secret privilege, which, when properly invoked, precludes disclosure of sensitive or secure information, subject to a balancing of litigants' needs against governmental interests, including security. *See Kerr v. U.S. Dist. Ct. N. Dist. Cal.*, 511 F.2d 192, 198 (9th Cir. 1975); *Smith v. Coulombe*, No. 2:11-cv-00531, 2012 WL 7001533, at *7 n.4 (D. Or. Nov. 30, 2012). However, the state must formally claim this privilege, and meet other procedural requirements, to obtain its protections, and defendants have not done so here.

separate suit against an Oregon correctional institution, *Bepple v. Shelton*, No. 3:15-cv-727-SI (D. Or. 2017). *See* Washington Decl. ¶¶ 3-5, & Ex. 1 (Docket No. 43). In *Bepple*, the defendants produced to Mr. Berman thumb drives containing prison video surveillance footage. "The video surveillance footage contained in the thumb drives [was] highly sensitive." *Id.*, Ex. 1, at 5. "Release of prison video surveillance could reveal or otherwise identify security measures or weaknesses or potential weaknesses in security measures. . . . [I]t could be used to breach or attempt to breach security measures." *Id.* The video depicted the faces of inmates and employees, whose identities might be determined from the video, potentially resulting in their being targeted. *Id.* When it came time for Mr. Berman to return the thumb drives to defendants, he said he had "not been able to locate" them. *Id.* It seemed that he had lost them. *Id.* ¶ 3. In an order, Judge Simon stated, "The Court has serious concerns over the careless handling by Mr. Berman of the four confidential thumb drives . . . ." *Id.*, Ex. 1, at 5. The order continued, "in any future litigation in which a plaintiff is represented by Mr. Berman, the Oregon Department of Justice may present a copy of this Order to any Court considering whether copies of confidential information should be disclosed to Mr. Berman and, if so, under what circumstances . . . ." *Id.*, at 6. The present case is such litigation.

Defendants raise this incident to argue against producing sensitive security information or documents to plaintiff, specifically, TRCI floor plans and CCTV information. They argue that a protective order is not sufficient to guarantee the protection of sensitive information, as a protective order had been entered in *Bepple*.

In light of Judge Simon's *Bepple* order, the Court has serious confidentiality and safety concerns about requiring defendants to disclose confidential or sensitive information—specifically, the TRCI floor plans and CCTV information, which are the materials as to which

defendants raise these concerns—to Mr. Berman. The protective order in this case does not allay these concerns. Accordingly, the Court will not compel defendants to turn over to plaintiff documents concerning TRCI floor plans or CCTV operations. Instead, the Court adopts a version of defendants' compromise proposal, a tour of TRCI, discussed below.

c) Tour of TRCI and Deposition of Myrick

As an alternative to producing floor plans and CCTV information, defendants propose arranging for plaintiff's counsel to tour TRCI where Banks was housed on the "date alleged" in order for counsel to observe that location. Defs. Resp., at 11 (Docket No. 42).[6]

Given the Court's serious security concerns, the Court finds that allowing Mr. Berman to tour TRCI is an adequate and appropriate alternative to requiring defendants to turn over sensitive information regarding prison floor plans or CCTV operations. As to the relevant discovery requests (Reqs. for Prod. No. 4 - 7 & Interrog. No. 1), the Court will not compel responses to the requests as written. Instead, the parties shall confer and arrange for plaintiff's counsel to tour the areas of TRCI at issue in the Second Amended Complaint. Included on the tour shall be any areas of the prison which Banks accessed or had access to in January and February 2014, and the CCTV recording and monitoring of those areas.

Additionally, at Myrick's deposition, defendants shall bring any documents responsive to the discovery requests regarding floor plans and CCTV (Reqs. for Prod. No. 4 - 7 & Interrog. No. 1), but limited to floor plans or CCTV operations, maintenance, monitoring, and staffing from January and February 2014, and only as to prison areas that Banks accessed or had access to during those months. Plaintiff may inspect these documents at the deposition, and question

---

[6] Defendants made their security objection, and cited *Procunier*, only with regard to the floor plan discovery request (Req. for Prod. No. 4), and did not make the objection as to CCTV discovery requests (Reqs. for Prod. No. 5 - 7 & Interrog. No. 1), although defendants propose the TRCI tour as a response to both sets of requests.

Myrick, as former Assistant Superintendent of Security, about them. However, due to the Court's security concerns, neither plaintiff nor her counsel shall be permitted to take with them any of these documents outside of or after the deposition. The documents shall not be attached to Myrick's deposition transcript, filed with the Court, or otherwise disclosed. The documents shall remain in defendants' custody and control.

### 3. Oregon Public Records Law

In response to discovery requests regarding whether Myrick has been under investigation in relation to his state employment (Req. for Prod. No. 12 & Interrog. No. 5), defendants object that these requests seek documents or information "exempt from disclosure under Or. Rev. Stat. § 192.501(12)." *E.g.*, Pl. Mot., at 15 (Docket No. 39).

This objection is misplaced. Whether certain information is exempt from Oregon's Inspection of Public Records statute, Or. Rev. Stat. § 192.410 *et seq.*, is irrelevant to whether the documents are relevant and discoverable in a federal court proceeding. That Or. Rev. Stat. § 192.501(12) exempts from disclosure "personnel discipline action[s], or materials or documents supporting th[ose] action[s]" pertains to whether the public can obtain those records through inspection requests; it places no limit on a federal litigant's ability to obtain them through discovery. *Brown v. State of Or., Dep't of Corr.*, 173 F.R.D. 262, 263-64 (D. Or. 1997); *Estate of Shafer v. City of Elgin*, No. 2:12-cv-00407-SU, 2014 WL 1303095, at *2-4 (D. Or. Mar. 28, 2014). The Court will not limit discovery based on this objection.

### B. Individual Requests for Production

Having considered these overarching concerns, the Court looks to each discovery request individually. Although defendants' objections are largely not well-taken, as discussed, plaintiff provides minimal argument, almost entirely without attention to specific requests or objections,

and with no citation of authority, to show why defendants' objections are not meritorious or why she is entitled to the discovery she seeks. The Court already informed plaintiff, at the Status Conference, that such threadbare argumentation is seriously deficient, but plaintiff failed to expand upon her email briefing in her Motion to Compel. The Court limits plaintiff's discovery requests to what is relevant and proportional, under Fed. R. Civ. P. 26(b)(2)(C), as follows:

Req. for Prod. No. 1 (Peters and Myrick): "All documents, including audio and video and incident reports, logbook entries, or any other writing referring or relating to the subject health iss[u]es starting November 13, 2012."

Ruling: The Court interprets "the subject health issues" to be Banks' reported and alleged health issues, including those that plaintiff claims, and defendants claim, caused his death. This information is relevant to claims of denial of medical care and medical deliberate indifference. The request is proportional. Plaintiff's Motion to Compel as to this request is GRANTED.

Req. for Prod. No. 2 (Peters and Myrick): "All documents including duty rosters, employment registers, that reflect the full name for all nursing and corrections staff[.]"

Ruling: This request is overly broad and unduly burdensome. It is apparently unlimited as to time and location. The Court limits the request to documents reflecting the names of corrections staff on floors Banks accessed or had access to, and staff who had contact or communication with Banks, on February 4 and 5, 2014, and documents reflecting the names of nursing staff on duty at TRCI on those dates. GRANTED IN PART AND DENIED IN PART.

Req. for Prod. No. 3 (Peters and Myrick): "All documents that reflect lawsuits and filed complaints, and their resolution, against the State for inmate deaths due to medical or dental negligence or inattention since 2002."

Ruling: This request is overly broad, unduly burdensome, and not proportional. *See Brook v. Carey*, 352 F. App'x 184, 185-86 (9th Cir. 2009) (finding prisoner civil rights plaintiff's discovery request for "any and all grievances, complaints, or other documents received by the defendants concerning mistreatment of inmates" to be "overbroad, immaterial . . . and overly burdensome" (alterations omitted)). The Court limits the request to documents pertaining to lawsuits and complaints against defendants concerning inmate deaths at TRCI due to medical negligence or inattention since 2010. GRANTED IN PART AND DENIED IN PART.

Req. for Prod. No. 4 (Peters and Myrick): "All documents that reflect floor plans for TRCI and the level on which Banks resided."

Ruling: As discussed, the Court will not compel disclosure of this information, due to safety and security concerns. Instead, the Court orders defendants to allow plaintiff's counsel to tour the relevant areas of TRCI, and to bring responsive documents to Myrick's deposition, as discussed and limited above.[7] GRANTED IN PART AND DENIED IN PART.

Req. for Prod. No. 5 (Peters and Myrick): "All documents that reflect closed circuit televis[i]on (CCTV) maintenance and operational status from November 2013- the present, and all rules and regulations regarding maintaining CCTV."

Ruling: Same as Request No. 4. GRANTED IN PART AND DENIED IN PART.

Req. for Prod. No. 6 (Peters and Myrick): "All documents that reflect staffing and stations for corrections in the TRCI, including a demarcation for any areas that are NOT visible on CCTV."

Ruling: Same as Request No. 4. GRANTED IN PART AND DENIED IN PART.

---

[7] Documents that reflect floor plans or CCTV operations, maintenance, monitoring, and staffing from January and February 2014, and only as to areas of the prison that Banks accessed or had access to during those months.

Req. for Prod. No. 7 (Peters and Myrick): "All staffing and policies regarding monitoring CCTV."

Ruling: Same as Request No. 4. GRANTED IN PART AND DENIED IN PART.

Req. for Prod. No. 8 (Peters and Myrick): "All staffing and policies regarding monitoring inmates, and a[t] what interval."

Ruling: This request is overly broad and unduly burdensome. It is apparently unlimited as to time and location. The Court limits this request to documents pertaining to "staffing and policies regarding monitoring inmates," including at what intervals, in place in January and February 2014, as to the floor where Banks resided and any other floors he had access to, at TRCI. GRANTED IN PART AND DENIED IN PART.

Req. for Prod. No. 9 (Peters and Myrick): "All staffing and policies for monitoring inmate phone calls, including but not limited to, who listens to inmate call, how often and where monitoring of calls and their content is logged, if anywhere."

Ruling: This request is overly broad and unduly burdensome. It is apparently unlimited as to time and location. The Court limits this request to documents pertaining to "staffing and policies for monitoring inmate phone calls" for January and February 2014, as to any phones Banks had access to at TRCI. GRANTED IN PART AND DENIED IN PART.

Req. for Prod. No. 10 (Peters and Myrick): "All policies for housing designations for inmates, including the criteria for specific housing and grounds to move inmates and change housing."

Ruling: This request is overly broad and unduly burdensome. It is apparently unlimited as to time. The Court limits this request to documents pertaining to housing designation policies in place in January or February 2014. GRANTED IN PART AND DENIED IN PART.

Req. for Prod. No. 11 (Myrick): "All documents that delineate your title, duties and job description in January to June 2014, and what is you employment [status], location, title today."

Ruling: Myrick's job title, duties, description, and location are relevant, and this request is proportional. GRANTED.

Req. for Prod. No. 12 (Myrick): "All documents that reflect or are related to whether you have been under investigation for your state employment since 2014 and the current state of the investigation."

Ruling: The request is overly broad and not proportional, because it is not limited to investigations relevant to plaintiff's claims. The Court limits this request to investigations concerning alleged indifference to inmate safety or health, inmate wrongful death, improper surveillance or monitoring of inmates, housing of inmates, threats against inmates, improper medical care, indifference to medical needs, or failure to provide medical treatment. GRANTED IN PART AND DENIED IN PART.

### C. Individual Interrogatories

Interrog. No. 1 (Peters and Myrick): "What was the operational status of closed circuit television on F[e]b. 4-6[,] 2014, and the status today?"

Ruling: The CCTV operational status "today" is not relevant. As to the status in February 2014, the Court will not compel disclosure of this information, due to safety and security concerns. Instead, the Court orders defendants to allow plaintiff's counsel to tour the relevant areas of TRCI, and to permit questioning on CCTV operations at Myrick's deposition, as discussed and limited above.[8] GRANTED IN PART AND DENIED IN PART.

---

[8] Limited to CCTV operations, maintenance, monitoring, and staffing from January and February 2014, and only as to prison areas that Banks accessed or had access to during those months.

Interrog. No. 2 (Peters and Myrick): "What was the staffing of corrections officer in Febraury [sic] 2014, as to ratio between inmates and officers?"

Ruling: Plaintiff's claims address improper staffing and the effect on inmate safety. The interrogatory is relevant and proportional. GRANTED.

Interrog. No. 3 (Peters and Myrick): "Why was Banks put into general population and moved after being in segregation, especially after threats of others kicking his ass and being in fear for his life?"[9]

Ruling: Banks' housing, location, and security, especially in relation to threats against him, are relevant to plaintiff's claims. The interrogatory is proportional. GRANTED.

Interrog. No. 4 (Myrick): "When was the first and last time you saw Mr. Banks alive in TRCI?"

Ruling: The circumstances of Banks' death are relevant. The interrogatory is proportional. GRANTED.

Interrog. No. 5 (Myrick): "Have you ever been investigated regarding your state TRCI employment, and if so, the reason for the investigation and the current posture/resolution of the investigation?"

Ruling: As with Request for Production No. 12, this interrogatory is overly broad and not proportional, because it is not limited to investigations relevant to plaintiff's claims. The Court limits this interrogatory to investigations concerning alleged indifference to inmate safety or health, inmate wrongful death, improper surveillance or monitoring of inmates, housing of

---

[9] The Courts assumes that "kicking his ass" is a quotation of actual threats that Banks allegedly received, and is not counsel's own choice of words or characterization of purported threats, as such language would obviously be inappropriate for an attorney's submission to the Court.

inmates, threats against inmates, improper medical care, indifference to medical needs, or failure to provide medical treatment. GRANTED IN PART AND DENIED IN PART.

## CONCLUSION

For these reasons, the Court GRANTS IN PART AND DENIES IN PART plaintiff's Motion to Compel Discovery. (Docket No. 39). Defendants shall make themselves available for deposition, respond to plaintiff's discovery requests, and arrange for a tour of TRCI, in accordance with this Opinion and Order.

IT IS SO ORDERED.

DATED this <u>6th</u> day of <u>October</u>, 2017.

<u>/s/ Patricia Sullivan</u>
PATRICIA SULLIVAN
United States Magistrate Judge